GUIDO SAVERI (Bar No. 22349)
guido@saveri.com
R. ALEXANDER SAVERI (Bar No. 173102)
rick@saveri.com
CADIO ZIRPOLI (Bar No. 179108)
cadio@saveri.com
DAVID SIMS (Bar No. 248181)
dsims@saveri.com
**SAVERI & SAVERI, INC.**
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Attorneys for Plaintiff
and all others similarly situated*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

C 07 5480 JSW

| | |
|---|---|
| GEORGEJON, INC. on behalf of itself and all others similarly situated, | CIVIL ACTION NO. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS COMPANY LTD;SAMSUNG SEMICONDUCTOR, INC.;HITACHI AMERICA, LTD.; HITACHI, LTD.;HYNIX SEMINCONDUCTOR, INC.; HYNIX SEMICONDUCTOR AMERICA, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY, INC.; MITSUBISHI ELECTRIC AND ELECTRONICS U.S.A., INC.; MITSUBISHI ELECTRIC CORP.; RENESAS TECHNOLOGY AMERICA, INC.; RENESAS TECHNOLOGY CORPORATION; TOSHIBA AMERICA CORPORATION; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; TOSHIBA CORPORATION; MOSEL VITELIC INC. and SANDISK CORPORATION, | |
| Defendants. | |

1
CLASS ACTION COMPLAINT

Plaintiff, by and through its attorneys, brings this civil action against the above-named Defendants for damages and injunctive relief under the Sherman Antitrust Act. Plaintiff alleges, upon information and belief, except as to those paragraphs applicable to the named Plaintiff, which are based on personal knowledge, as follows:

## I. NATURE OF THE ACTION

1. This action is brought on behalf of all persons and entities who purchased flash memory as described below in the United States directly from a defendant between January 1, 1999 through the present.

2. As alleged in more detail below, defendants and their co-conspirators conspired to fix, raise, maintain and stabilize the price of flash memory sold in the United States, in violation of federal antitrust laws including the Sherman Antitrust Act (15 U.S.C. § 1). As a result of defendants' unlawful conduct, plaintiff and other purchasers of flash memory paid artificially inflated prices during the class period. Such prices exceeded the amount they would have paid if the price for flash memory had been determined by a competitive market.

## II. PARTIES

3. Plaintiff GeorgeJon, Inc. is an Illinois corporation located in Chicago, Illinois. Plaintiff purchased flash memory directly from one or more of the Defendants during the class period and was injured as a result of defendants' illegal conduct.

4. Defendant Samsung Electronics Company Ltd. ("SEC"), a Korean corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the class period, Samsung Electronics Company Ltd. manufactured, sold, and distributed flash memory throughout the world, including the United States.

5. Defendant Samsung Semiconductor, Inc. ("SSI") is a California corporation located at 3655 North First Street, San Jose, California 95134. Samsung Semiconductor, Inc is a wholly owned and controlled subsidiary of defendant Samsung Electronics Col, Ltd. During the class period, Samsung Semiconductor, Inc. sold and distributed flash memory throughout the United States. Defendants Samsung Electronics Company Ltd. and Samsung Semiconductor, Inc. are collectively referred to herein as "Samsung".

2
CLASS ACTION COMPLAINT

6. Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo, 100-8220, Japan. During the class period, Hitachi Ltd. manufactured, sold and distributed flash memory throughout the United States.

7. Defendant Hitachi America, Ltd. is a wholly owned and controlled subsidiary of Defendant Hitachi, Ltd. Hitachi America, Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York 10591. During the class period, Hitachi America, Ltd. sold and distributed flash memory to customers throughout the United States. Defendants Hitachi America, Ltd. and Hitachi, Ltd. are referred to collectively herein as "Hitachi."

8. Defendant Hynix Semiconductor, Inc. is a business entity organized under the laws of South Korea, with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyongki-do, Korea. During the class period, Hynix Semiconductor Inc. manufactured, sold and distributed flash memory to customers throughout the United States.

9. Defendant Hynix Semiconductor, Inc. is a wholly owned and controlled subsidiary of defendant Hynix Semiconductor, with its principal place of business at 3101 North First Street, San Jose, California 95134. During the class period, Hynix Semiconductor, sold and distributed flash memory to customers throughout the United States. Defendants Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively herein as "Hynix."

10. Defendant Micron Technology, Inc. is a Delaware Corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho 83716. During the class period, Micron Technology, Inc. manufactured, sold and distributed flash memory to customers throughout the United States.

11. Defendant Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of defendant Micron Technology, Inc. with its principal place of business at 8000 South Federal Way, Boise, Idaho 83716. During the class period, Micron Semiconductor Products, Inc. sold and distributed flash memory to customers throughout the United States. Defendants Micron Semiconductor Products, Inc, and Micron Technology, Inc. are referred to

collectively herein as "Micron".

12. Defendant Mitsubishi Electric Corp. is a business entity organized under the laws of Japan, with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan. During the class period, defendant Mitsubishi Electric Corp. manufactured, sold and distributed flash memory to customers throughout the United States.

13. Defendant Mitsubishi Electric and Electronics U.S.A., Inc, is a wholly owned and controlled subsidiary of defendant Mitsubishi Electric Corporation. Defendant Mitsubishi Electric and Electronics USA, Inc. is a business entity organized under the laws of Delaware, with its principal place of business at 500 Corporate Woods Parkway, Vernon Hills, Illinois 60061. During the class period, defendant Mitsubishi Electric and Electronics USA, Inc. manufactured, sold and distributed flash memory to customers throughout the United States. Defendants Mitsubishi Electric and Electronics U.S.A., Inc. are referred to collectively herein as "Mitsubishi."

14. Defendant Renesas Technology Corporation is a business entity organized under the laws of Japan with its principal place of business at Marunouchi Building, 4-1, Marunouchi 2-chome, Chiyoda-ku Tokyo 100-6334, Japan. During the class period, Renesas Technology Corporation sold and distributed flash memory to customers throughout the United States.

15. Defendant Renesas Technology America, Inc. is a wholly owned and controlled subsidiary of defendant Renesas Technology Corporation with its principal place of business at 450 Holger Way, San Jose, California 95134. During the class period, Renesas Technology Corporation America, Inc. sold and distributed flash memory to customers throughout the United States. Defendants Renesas Technology America, Inc. and Renesas Technology Corporation are referred to collectively herein as "Renesas."

16. Defendant Toshiba Corporation ("TC") is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura I-chome, Minato-ku, Tokyo 105-9001, Japan. During the class period, Toshiba Corporation manufactured, sold and distributed flash memory throughout the United States.

17. Defendant Toshiba America Electronic Components is a wholly owned and

controlled subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110, New York, New York 10020. During the class period, Toshiba America Corporation manufactured, sold and distributed flash memory to customers throughout the United States.

18. Defendant Toshiba America Components, Inc. is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California 92612. During the class period, Toshiba America Electronics Corporation, Inc. sold and distributed flash memory to customers throughout the United States. Defendants Toshiba America Corporation, Toshiba America Electronic Components, Inc. and Toshiba Corporation are referred to collectively herein as "Toshiba."

19. Defendant Mosel Vitelic Inc. is a business entity organized under the laws of Taiwan with its principal place of business at No. 19 Li Hsin Road, Science-Based Industrial Park, Hsinchu, Taiwan, ("Mosel Vitelic"). During the class period, Mosel Vitelic sold and distributed Flash memory to customers throughout the United States.

20. Defendant SanDisk Corporation ("SanDisk") is a Delaware corporation with its principal place of business at 601 McCarthy Boulevard, Milpitas, California 95035. During the class period, SanDisk manufactured, sold and distributed flash memory to customers throughout the United States. In 2000, SanDisk and TC jointly formed FlashVision, Ltd. ("FlashVision"), which operated a fabrication facility in Manassas, Virginia. In May of 2002, FlashVision decided to consolidate 200mm NAND wafer production in Fabs 1 and 2 of Toshiba's facilities in Yokkaichi, Japan. In September of 2004, Toshiba and SanDisk formed Flash Partners, Ltd., a second joint venture, that constructed a Fab 3 at Yokkaichi to manufacture 300mm NAND wafers. In July of 2006, they created a third joint venture, Flash Alliance, Ltd., which built Fab 4, another 300mm wafer facility at Yokkaichi that went online on September 4, 2007.

### III. CO-CONSPIRATORS

21. Various others, presently unknown to plaintiff, participated as co-conspirators with the defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

22. The acts charged in this Complaint have been done, within this district and worldwide, by defendants and their co-conspirators, or were authorized, ordered, or done by their respective officers, agents, employees, or representatives while actively engaged in the management of each defendant's business or affairs.

## IV. JURISDICTION AND VENUE

23. This Complaint is brought under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) to obtain relief and recover treble damages and the costs of this suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the members of this Class by reason of defendants' violations of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).

25. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391, because one or more defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

## V. CLASS ACTION ALLEGATIONS

26. Plaintiff brings this suit as a class action pursuant to the Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of itself and a class composed of and defined as follows:

> All persons and entities (excluding defendants, their parents, subsidiaries, and affiliates, all governmental entities, and all co-conspirators) residing in the United States who purchased flash memory directly from the defendants from January 1, 1999 to the present ("Class Period").

27. Plaintiff does not know the exact number of class members because such information is in the exclusive control of defendants. Due to the nature of the trade and commerce involved, however, plaintiff believes that class members are sufficiently numerous and geographically dispersed throughout the United States such that joinder of class members is impracticable.

28. The Class is ascertainable and there is a well-defined community of interest among

the class members.

29. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff purchased flash memory from one or more of the defendants and their co-conspirators, and therefore, plaintiff's claims arise from the same common course of conduct giving rise to the claims of the class members and the relief sought is common to the Class.

30. Numerous questions of law and fact arising from defendants' anticompetitive conduct are common to the Class, including:

    a. whether defendants engaged in a contract, combination, or conspiracy to fix, maintain, or stabilize the prices of, or allocate the market for, flash memory sold in the United States;

    b. the duration of the conspiracy alleged in the Complaint and the nature and character of the acts performed by defendants in furtherance of the conspiracy;

    c. whether the alleged conspiracy violated Section 1 of the Sherman Act;

    d. whether defendants' conduct caused prices of flash memory to be artificially inflated to non-competitive levels; and

    e. whether plaintiff and other members of the Class were injured by defendants' conduct and, if so, the appropriate measure of damages and appropriate injunctive relief.

31. These and other questions of law or fact are common to the class and predominate over any questions affecting only individual Class members.

32. Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation.

33. A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy because individual joinder of all damaged class members is impractical. The damages suffered by many individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

7
CLASS ACTION COMPLAINT

absent the availability of class action procedures, it would not be feasible for many Class members to redress the wrongs done to them. Even if Class members could afford individual litigation, the court system could not. Furthermore, prosecution of separate actions by individual class members would create the risk of inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

34. Injunctive relief is appropriate as to the Class as a whole because defendants have acted and refused to act on grounds generally applicable to the Class.

35. In the absence of a class action, defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## VI. INTERSTATE TRADE AND COMMERCE

36. During the class period, defendants and their co-conspirators manufactured, sold, and distributed flash memory in a continuous and uninterrupted flow of interstate and international commerce, including to and throughout the United States. During each year of the class period, total sales of flash memory were in the billions of dollars.

## VII. FACTUAL ALLEGATIONS

37. Flash memory is a non-volatile memory that is easily reprogrammable within a system. It is electronically eraseable and can write and erase data many times, but does not lose stored data when the power is turned off.

38. Toshiba invented NOR ("Not Or") flash technology in 1984 and NAND ("Not And") flash technology in 1987. In NOR flash memory, individual memory cells are connected in parallel, which enables the short read times required for random access of microprocessor instructions. NOR flash memory is ideal for lower-density, high speed read applications that are mostly "read only," often referred to as code-storage applications. NAND flash memory was a technology developed for high density data storage, trading off random access capability to achieve a smaller cell size. This was done by creating an array of memory transistors connected in a series. NAND flash systems enable faster writes and erasures by programming blocks of data.

1  NAND flash memory is ideal for low-cost, high-density, high-speed program, often referred to as data-storage applications.

39. Samsung has said that NAND flash memory is the fastest-growing product segment in the global semiconductor market. It is sold, among other ways, as: (a) flash memory cards (such as Compact Flash cards, MMC cards, SD cards, mini-SD cards, micro-SD cards and XD cards) that are incorporated into products such as cameras, handsets, and camcorders; (b) flash drives utilizing the universal serial bus ("USB") interface; and (c) embedded flash memory for consumer and handset applications (such as the Apple iPOD).

40. NAND Flash memory is now produced in single level cell ("SLC") and multi-level cell ("MLC") variants. MLC NAND flash memory allows each memory cell to store two bits of information, compared to the one bit power cell that SLC NAND flash memory allows. As a result, MLC NAND flash memory offers a larger capacity at a cost point appropriate for consumer produces such as multi-function cell phones, digital cameras, USB drives and memory cards. On the other hand, SLC NAND flash memory, while offering a lower density, provides faster write speeds and has a lower likelihood of error. In addition, MLC NAND flash memory typically has a lower lifecycle expectancy than SLC NAND flash memory.

41. Samsung entered the NAND flash memory market in 2001, where its major rival was Toshiba. In 2004, Hynix gained a significant presence in the market and has become the third-leading manufacturer. According to Samsung, the major companies in that market in 2004 and 2005 are as follows (dollar figures are in millions):

| Rank 2005 | Rank 2004 | Supplier | Revenue 2005 | Revenue 2004 | Market Share | Growth 2005 |
|---|---|---|---|---|---|---|
| 1 | 1 | Samsung | $ 5,742 | $ 3,901 | 52.9% | 47.2% |
| 2 | 2 | Toshiba | $ 2,382 | $ 1,850 | 21.9% | 28.8% |
| 3 | 4 | Hynix | $ 1,382 | $ 221 | 12.7% | 525% |
| 4 | 3 | Renesas | $ 735 | $ 600 | 6.8% | 22.5% |
| 5 | 7 | Micron | $ 238 | $ 8 | 2.2% | 2875% |

By the end of 2006, Samsung, Toshiba and Hynix controlled nearly 90% of the worldwide sales of NAND flash memory based on data from iSuppli Corporation ("iSuppli"), an industry analyst: Samsung 45.4%, Toshiba 26.1%, Hynix 17.7%, Renesas 4.8%, Micron 2.9%, and Other 3.1%.

42. Flash memory is, in many respects, a commodity product and hence is highly price elastic. One would therefore expect rivals within this market to compete on price in order to obtain increased market share and to maintain capacity levels in a manner that ensured such price competition.

43. The defendants belong to a web of different trade associations and participate in various industry trade shows, all of which provide forums at which they can collude to fix prices and limit capacity for flash memory.

44. One such association is the Compact Flash Association ("CFA"), founded in October of 1995 to promote the Compact Flash memory form factor. Samsung, Toshiba, Hitachi, Mitsubishi and Renesas are all members of the organization.

45. In addition to having internal meetings of members at which collusion concerning NAND flash memory pricing and supply could have occurred, the CFA and its members participated in various trade show meetings at which two or more of the defendants were present and thus had any opportunity to conspire on the pricing and supply of NAND flash memory. These include the following:

| Event, Dates and Venue | Defendants Who Are Members of CFA Who Participated |
|---|---|
| 2001 Consumer Electronics Show ("CES"), Las Vegas, NV, Jan. 6-9, 2001 | Samsung, Hitachi |
| PMA 2001, Orange County, CA, Feb. 11-14, 2001 | Samsung, Hitachi |
| CES International, Las Vegas, NV, Jan. 8-11, 2002 | Samsung, Toshiba |
| Photokina 2002, Koln, Germany, | Samsung, Toshiba, Hitachi, |

| | |
|---|---|
| Sept. 25-30, 2002 | Mitsubishi |
| WPC Expo 2003, Tokyo, Japan, Sept. 17-20, 2003 | Samsung, Hitachi, Toshiba |
| CES 2006, Las Vegas, NV, Jan. 5-8, 2006 | Samsung, Hitachi, Toshiba |

46.  Hynix, Micron and Hitachi are also members of the Open NAND Flash Interface Group ("ONFI"), an organization formed in May of 2006 to promote the integration of NAND flash memory in consumer electronic devices. Meetings of the organization provided opportunities for these defendants to conspire on the pricing and supply of NAND flash memory.

47.  In addition, Samsung and Micron are members of the Multimedia Card Association ("MCA"), an organization founded in 1998 that bills itself as "global forum for memory card and semiconductor component suppliers." Meetings of this organization provided these defendants with opportunities to conspire on the pricing and supply of flash memory.

48.  Samsung, Hynix, Toshiba, Hitachi, Mitsubishi, Renesas and Micron are also members of the JEDEC Solid State Technology Association ("JEDEC"), an organization initially created in 1960, which is the semiconductor engineering standardization body of the electronic Industries Alliance. JEDEC touts as one of the advantages of membership "tak[ing] advantage of NETWORKING opportunities" by "mak[ing] valuable contacts throughout the industry…". Meetings of this organization provided defendants with opportunities to conspire on the pricing and supply of flash memory. Defendants are also members in one or more other trade associations that provide opportunities to conspire on the pricing and supply of flash memory. These include: (a) the 1394 Trade Association, in which Samsung, Toshiba, Hitachi, Renesas, Mitsubishi are members; (b) the Semiconductor Equipment association of Japan ("SEAJ"), in which Toshiba, Hitachi, Mitsubishi, and Samsung's Japanese subsidiary are members and (c) the Korea Semiconductor Industry Association ("KSIA"), in which Samsung and Hynix are members.

49.  In addition, Hynix and Samsung are participants in iSEDEX - - the International Semiconductor and Display Exhibition-- held annually in Seoul, Korea. The 2006 iSEDEX conference was held there during October 11-13, 2006. This trade show provided these companies

with opportunities to conspire on the pricing and supply of flash memory.

50. Another forum that provides such opportunities is the "Flash Memory Summit" held annually in Santa Clara, California, commencing in 2006. As its website indicates, defendants named here sent representatives to sessions of the summit.

51. Two of the defendants named here - - Hynix and Samsung have already pled guilty to price-fixing in the related industry for dynamic random access memory ("DRAM") industry and have paid substantial fines to the United States Department of Justice ("DOJ") for those unlawful activities ($300 million for Samsung and $185 million for Hynix). Defendant Micron was the amnesty applicant in the DRAM price-fixing investigation. Major direct purchasers of DRAM—Honeywell International, Inc, Unisys Corp., and Sun Microsystems, Inc.—have also filed antitrust actions involving DRAM against several other defendants here: Mitsubishi, Hitachi, and/or Renesas.

52. Several of the individuals employed by defendants who pled guilty to criminal felonies in the DOJ's DRAM investigation may have also had pricing responsibility for flash memory. For defendant Samsung, these include: (1) Tom Quinn, SSI's Vice-President of Marketing for Memory Products, (2) Y.H. Park, SEC's Vice-President of Sales who had responsibility for U.S. memory pricing, and (3) I. U. Kim, SEC's Vice-President of Marketing. Those from Defendant Hynix who pled guilty to felony violations in DRAM and who also may have responsibility for flash pricing included it Senior Vice President and General Manager of Worldwide Sales and Marketing (D.S. Kim); its Director of Global Strategic Accounts (C.K. Chung); and its Senior Manager and Vice President for Product Marketing and Vice President for Operations (C.Y. Choi).

53. Defendants are also under investigation by the DOJ with respect to collusive pricing activities in the market for static random access memory ("SRAM").

54. One commentator has noted the pervasiveness of cartel activity among defendants and others in the semiconductor industry: "If the DOJ wanted to, it could just go down every line in the semiconductor industry and find the same issue,' said Gartner Inc. analyst Richard Gordon. That's because there are a relatively few number of suppliers in the chip industry and an open flow

of communication between competitors and customers, who may not define price fixing the same way the DOJ does, he said.

55.  Defendants, through their officers, directors, and employees, effectuated the conspiracy between themselves and their co-conspirators by, among other things:

    a.  participating in meetings, conversations and communications with competitors to discuss and share information concerning the prices of flash memory in the United States;

    b.  agreeing to charge prices at certain levels and otherwise to increase and/or maintain prices of flash memory sold in the United States through, inter alia, agreements to restrict the supply of flash memory in the United States;

    c.  issuing price announcements and quotations in accordance with the agreements reached;

    d.  selling flash memory to various customers in the United States at non-competitive prices; and

    e.  agreeing to limit the supply and otherwise cutting back the supply of flash memory.

56.  On September 14, 2007, SanDisk indicated in a Form 8-K filed with the Securities & Exchange Commission that it had received subpoenas from the federal district court in the Northern District of California in connection with an grand jury investigation into possible antitrust violations in the NAND flash memory market. It also indicated that it had received notices from the Canadian Competition Bureau ("CCB") that that entity had "commenced an industry-wide investigation with respect to alleged anti-competitive activity" in that market.

57.  A DOJ spokesperson has confirmed that it is conducting an antitrust investigation into NAND flash memory. John Pecman, an assistant deputy commissioner in the criminal matters branch of the CCB confirmed the existence of an investigation. He was quoted as saying: ``We have sent target letters to a number of industry participants to let them know that we're also investigating. Given the international scope of the industry, we try to work in parallel with other international agencies."

58.     In a subsequent press report, Toshiba, Hitachi and Samsung all confirmed that they or their U.S. subsidiaries had received grand jury subpoenas as well. Hynix's spokesperson declined to comment. The report added: " 'I'm not surprised by the action, given recent investigations into SRAM and DRAM,' said Edwin Mok, an analyst at Needham & Co. in San Francisco.' " Kim Nam Hyung, an analyst at iSuppli, was quoted as saying that "most suppliers mentioned are DRAM makers who should have learned the lesson of the price-fixing case."

## VIII. FRAUDULENT CONCEALMENT

59.     Plaintiff and members of the Class did not discover and could not have discovered, through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until late 2006 because Defendants and their co-conspirators actively and fraudulently concealed the existence of their contract, combination or conspiracy.

60.     Because the Defendants' agreement, understanding and conspiracy was kept secret, Plaintiff and Class members were unaware of Defendants' unlawful conduct alleged herein and did not know that they were paying artificially high prices for flash memory throughout the United States.

61.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

62.     By its very nature, Defendants' price-fixing conspiracy was inherently self-concealing.

63.     Plaintiff and the Class members could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, conspiracy or combination. The contract, conspiracy or combination as herein alleged was fraudulently concealed by Defendants by various means and methods, including, but not limited to, secret meetings, misrepresentations to customers concerning the reason for price increases and surreptitious communications between the Defendants by the use of the telephone or in-person meetings at trade association meetings (and elsewhere) in order to prevent the existence of written records.

64. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statue of limitations has been tolled with respect to any claims that Plaintiff and the Class members have as a result of the anticompetitive conduct alleged in this complaint.

65. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise affecting the claims of Plaintiff and the Class have been tolled.

## IX. VIOLATIONS ALLEGED

66. Beginning at a date unknown, but at least as early as January 1, 1999, and continuing to the present, Defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize prices for flash memory in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

67. In formulating and carrying out the alleged conspiracy, the defendants and their co-conspirators perpetrated the acts which they combined and conspired to do, including, but not limited to:

    a. fixing, raising, maintaining, and stabilizing the price of flash memory;

    b. allocating production of flash memory; and

    c. restricting output of flash memory.

68. The conspiracy's effects include, but are not limited to:

    a. price competition in the sale of flash memory has been restrained, suppressed and/or eliminated in the United States;

    b. prices for flash memory sold by defendants and their co-conspirators have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

    c. direct purchasers of flash memory from defendants and their co-conspirators have been deprived of the benefits of free and open competition.

69. As a direct result of the unlawful conduct of defendants and their coconspirators, plaintiff and the Class have been injured in their business and property because they have paid more for flash memory purchased directly from defendants and their co-conspirators than they would have paid in the absence of the conspiracy.

70. Plaintiff and the Class are entitled to treble damages and an injunction against defendants preventing and restraining the violations alleged herein.

## X. DAMAGES

71. During the class period, plaintiffs and the other members of the class purchased flash memory directly from the defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such violations. as a result, plaintiffs and the other members of the class have sustained damages to their business and property in an amount to be determined at trial.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That the Court determine that the Sherman Act claim alleged herein may be maintained as a class action under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

B. That the conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

C. That Plaintiff and the Class recover damages, as provided by federal antitrust law, and that a joint and several judgment in favor of plaintiff and the Class be entered against defendants in an amount to be trebled in accordance with such laws;

D. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (a) continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract,

conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (b) communicating or causing to be communicated to any other person engaged in the sale of flash memory, information concerning bids of competitors.

E.  That Plaintiff and the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

F.  That Plaintiff and the Class recover the costs of this suit, including reasonable attorneys' fees, as provided by law; and

G.  That Plaintiff and the Class be granted such other, further, and different relief as this case may require or as this Court may deem just, equitable and proper.

## JURY DEMAND

Plaintiff demands a jury trial, pursuant to Federal Rule of Civil Procedure 38(b), of all triable issues.

Dated: October 26, 2007

By: /s/ R. Alexander Saveri
GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
DAVID SIMS (248181)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, California 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

GARY L. SPECKS
KAPLAN, FOX & KILSHEIMER, LLP
423 Sumac Road
Highland Park, IL 60036
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

GREGORY ARENSON
KAPLAN, FOX & KILSHEIMER, LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

LAWRENCE WALNER
LAWRENCE WALNER & ASSOCIATES, LTD
150 North Wacker Drive, Suite 2150
Chicago, IL 60606
Telephone: (312) 201-1616
Facsimile: (312) 201-1538

Attorneys for Plaintiff and the Class

Flash.038

18
CLASS ACTION COMPLAINT

JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**

GEORGEJON, INC.

**DEFENDANTS**

SAMSUNG ELECTRONICS COMPANY LTD, et al.
(See Attachment A)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

SAVERI & SAVERI, INC., 111 Pine Street, Suite 1700
San Francisco, CA 94111-5619; Telephone: (415) 217-6810

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [x] Original Proceeding
- [ ] Removed from State Court
- [ ] Remanded from Appellate Court
- [ ] Reinstated or Reopened
- [ ] Transferred from Another district (specify)
- [ ] Multidistrict Litigation
- [ ] Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth In Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Satellite TV |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liabiltiy | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | ☐ 791 Empl.Ret. Inc. Security Act | ☐ 870 Taxes (US Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ disab - Empl | ☐ 555 Prison Condition | | | |
| | ☐ 446 Amer w/ disab - Other | | | | |

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. Section 1

**VII. REQUESTED IN COMPLAINT:**   ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE: 10-26-07

SIGNATURE OF ATTORNEY OF RECORD: R. Alexander [signature]

# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA

GEORGEJON, INC., on behalf of itself and all others similarly situated

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: C 07 5480 JSW

V.

SAMSUNG ELECTRONICS COMPANY LTD; SAMSUNG SEMICONDUCTOR, INC.; HITACHI AMERICA, LTD.; HITACHI, LTD.; HYNIX SEMINCONDUCTOR, INC.; HYNIX SEMICONDUCTOR AMERICA, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY, INC.; MITSUBISHI ELECTRIC AND ELECTRONICS U.S.A., INC.; MITSUBISHI ELECTRIC CORP.; RENESAS TECHNOLOGY AMERICA, INC.; RENESAS TECHNOLOGY CORPORATION; TOSHIBA AMERICA CORPORATION; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; TOSHIBA CORPORATION; MOSEL VITELIC INC. and SANDISK CORPORATION

TO: (Name and address of defendant)

See above named defendants

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, Ca 94941

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

DATE OCT 2 6 2007

ANNA SPRINKLES

(BY) DEPUTY CLERK